**In the Matter of the Commitment of Michael Dennis McCLURE, Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Respondent.**

No. 19739.

Supreme Court of Utah.

May 26, 1987.

Patricia A. DeMichele, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Linda Luinstra-Baldwin, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

Appellant Michael McClure appeals a district court ruling continuing his involuntary commitment to the Utah State Training School. The issue is whether the State complied with the statutory requirements for involuntary commitment found in Utah Code Ann. § 64–8–21(10) (1986). We hold that it did not and reverse and remand.

Appellant Michael McClure was civilly committed to the Utah State Training School in July of 1983 for a period of six months. A commitment review hearing was held in the district court on January 5, 1984. Dr. V.M. Sevey, a psychiatrist, and David Adamson, Ph.D., a licensed psychologist, examined Mr. McClure as designated examiners. They testified about and submitted written reports of their evaluations.

Dr. Sevey and Dr. Adamson concurred in the conclusion that Mr. McClure was both mildly retarded and suffering from psychiatric problems. Dr. Sevey concluded that Mr. McClure suffered from psychosis. His primary diagnosis was schizophrenia. His "secondary diagnosis" was mild mental retardation. Dr. Sevey's handwritten report described Mr. McClure's large size and detailed his unstable history, violent outbursts, low education level, and uncontrollable anger. At trial, Dr. Sevey testified that Mr. McClure experienced hallucinations, poor judgment, paranoid-type feelings, and thought disorder.

Dr. Adamson administered the Wexler Adult Intelligence Scale test during his examination and found that Mr. McClure had a full scale I.Q. score of 72. Although this score is higher than that generally used to identify mental retardation, Dr. Adamson believed that mild mental retardation existed because of the margin of error in the exam and because of Mr. McClure's adaptive problems.

Dr. Sevey and Dr. Adamson both testified that Mr. McClure poses a danger to himself and to others, that he is in need of treatment to improve his condition, and that he is unable to engage in rational decision making about his need for treatment.

Dr. Sevey and Dr. Adamson agreed that it would be inappropriate to release Mr. McClure to a residential living program. They agreed that he needs a structured, supervised program because of his inability to self-medicate and because of his uncontrollable outbursts of aggression. When asked whether the State Training School was an appropriate facility for Mr. McClure, Dr. Sevey and Dr. Adamson both testified that the Utah State Hospital was a more appropriate placement in view of Mr. McClure's mental illness. Dr. Adamson explained that the State Hospital has better facilities for treatment of psychiatric problems. Despite this evidence, the district court found sufficient evidence to continue the commitment of Mr. McClure at the State Training School.

The pertinent requirements for involuntary commitment because of mental retardation are found at Utah Code Ann. § 64–8–21 (1986). Subsection (10) of that statute provides:

The court may order commitment if, upon completion of the hearing and consideration of the record, the court finds by clear and convincing evidence that all of the following conditions are met:

(a) The individual to be committed is mentally retarded;

(b) Because of the individual's mental retardation one or more of the following conditions exist:

(i) He or she poses an immediate danger of physical injury to others or self;

(ii) He or she lacks the capacity to provide the basic necessities of life, such as food, clothing, or shelter; or

(iii) He or she is in immediate need of habilitation, rehabilitation, care, or treatment to cure or improve a condition which poses a threat of serious physical or psychological injury to himself or herself, and he or she lacks the capacity to engage in a rational decision-making process concerning the need for habilitation, rehabilitation, care, or treatment, as evidenced by an inability to weigh the possible costs and benefits of the care or treatment and the alternatives to it....

Utah Code Ann. § 64–8–21(10) (1986). Thus, the statute requires clear and convincing evidence that the person to be committed is mentally retarded, that because of the mental retardation the person is a threat to others or himself, that he or she lacks the ability to obtain the basic necessities of life, or that he or she is unable to determine the need for rehabilitation or treatment.

■ Appellant contends that under the statute, there must be a causal link between his mental retardation and the behavior that requires commitment. *See generally Matter of Grandy*, 50 Or.App. 239, 623 P.2d 666 (1981). While appellant concedes that he is in need of treatment, he argues that his need is due to his emotional or mental illness, and not to his mental retardation. Accordingly, appellant contends the continued commitment under the mental retardation statute was improper. We agree.

■ Subsection (10)(b) of Utah Code Ann. § 64–8–21 states: "Because of the individual's mental retardation one or more of the following conditions exist. . . ." This language requires a causal connection between the person's mental retardation and the conditions listed in subsection (10)(b). Furthermore, the causal connection must be proved by "clear and convincing" evidence. Utah Code Ann. § 64–8–21(10) (1986). The record in this case does not show by clear and convincing evidence that Mr. McClure's mental retardation is responsible for his violent outbursts, his inability to provide the basic necessities of life, or his inability to engage in rational thinking about his need for treatment. The record indicates Mr. McClure's disabilities are due to his mental illness rather than to his mental retardation. Without clear and convincing evidence of the causal connection between the adaptive behaviors and the mental retardation, the commitment order was improper.

In *Matter of Grandy*, 50 Or.App. 239, 623 P.2d 666 (1981), the Oregon Court of Appeals reversed a commitment order that placed a deaf woman with cerebral palsy in a training center. The evidence showed that she was unable to care for herself because of physical disabilities, not mental retardation. The court first noted that Grandy's intellectual functioning placed her above the "retarded" classification. 623 P.2d at 671. The court next interpreted Oregon's commitment statute to require a causal connection between the mental retardation and the person's inability to care for his or her personal needs. The court held commitment to the state training center was improper when the inability to care for one's personal needs arises from an independent source such as physical disability. 623 P.2d at 671.

We find the rationale in *Grandy* persuasive. The statute construed in *Grandy* is analogous to our commitment statute, and the causation language is nearly identical. As in *Grandy*, the evidence presented in this case suggests that Mr. McClure's aggressive and antisocial behavior is caused by an independent source: schizophrenia.

■ The State, in attempting to distinguish *Grandy* on its facts, blurs the distinction between mental illness and mental retardation. That approach is unwarranted. There are significant differences between mental retardation and mental illness that must not be ignored during involuntary commitment proceedings. Mental retardation, as defined in Utah Code Ann. § 64–8–13(5) (1986), "means a significant subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior." Mental illness, on the other hand, "means a psychiatric disorder . . . which substantially impairs a person's mental, emotional, behavioral or related functioning." Utah Code Ann. § 64–7–28(1) (1986). Importantly, the appropriate institutional responses to mental illness and mental retardation are quite different. The effects of mental retardation may be ameliorated with education and training, whereas mental illness requires psychiatric treatment, counseling, and/or drug therapy. Moreover, Utah has separate institutions designed to deal with persons who are mentally ill and persons who are mentally retarded. *See* Utah Code Ann. §§ 64–7–1

to –56 (1986); §§ 64–8–1 to –27 (1986). Mental illness is intended to be treated at the Utah State Hospital, whereas the limitations resulting from mental retardation are intended to be minimized through education and training at the Utah State Training School. *See generally Matter of K.M.L.*, 626 P.2d 574, 577 (Alaska 1981).

We conclude that the record does not demonstrate by clear and convincing evidence that Mr. McClure's mental retardation is causally connected to the behavior factors listed in section 64–8–21(10)(b). We therefore reverse the commitment order.

Appellant requests that we remand this matter to the district court with instructions to provide support services pursuant to Utah Code Ann. § 64–8–21(12)(b) and (c) (1986). In view of the strong evidence against releasing Mr. McClure to a residential program at this time, we believe a further hearing on the appropriateness of commitment to the State Hospital is necessary. We therefore remand for consideration of commitment to the Utah State Hospital pursuant to Utah Code Ann. § 64–7–36 (1986).

HALL, C.J., STEWART, A.C.J., and HOWE and ZIMMERMAN, JJ., concur.