STATE of Utah, Plaintiff and Appellee,

v.

Russell ANDERSON, Defendant and Appellant.

No. 880257.

Supreme Court of Utah.

March 6, 1990.

---

James A. Valdez, James C. Bradshaw, Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Christine F. Soltis, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant appeals his sentences for two convictions of second degree murder in violation of Utah Code Ann. § 76–5–203 (Supp. 1989). He claims that application of the sentencing provisions of Utah Code Ann. § 77–35–21.5 (Supp.1988) (amended 1989; repealed effective July 1, 1990) to mentally ill defendants violates article I, section 7 of the Utah Constitution and that the trial court erred in sentencing him to the Utah State Prison instead of the Utah State Hospital. We affirm.

In April 1988, defendant pleaded guilty and mentally ill to two counts of murder in the second degree. Pursuant to section 77–35–21.5(1), an evidentiary hearing was held to determine whether defendant should be confined at the state prison or the state hospital for treatment. The court considered the testimony of several witnesses and found that while defendant had established that he had a mental illness as defined by statute, he did not meet the other criteria required for commitment to the state hospital. The court thereafter sentenced defendant to two consecutive terms of five years to life to be served in the state prison.

 Utah Code Ann. § 77–35–21.5(4) (Supp.1988), the provision at issue, states in pertinent part:

(4) The court shall in its sentence order hospitalization at the Utah State Hospital or other suitable facility if, upon completion of the hearing and consideration of the record, the court finds by clear and convincing evidence that:

(a) the defendant has a mental illness as defined by Subsection 76–2–305(4);

(b) because of his mental illness the defendant poses an immediate physical

danger to others or self, which may include jeopardizing his own or others' safety, health, or welfare if placed in a correctional or probation setting, or lacks the ability to provide the basic necessities of life, such as food, clothing, and shelter, if placed on probation; . . .;

(e) the Utah State Hospital or other suitable facility can provide the defendant with treatment, care, and custody that is adequate and appropriate to the defendant's conditions and needs.[1]

Defendant's initial contention on appeal is that the application of section 77–35–21.-5(4)(b) to mentally ill defendants violates due process of law under Utah's constitution. Defendant, however, did not raise this issue below. Therefore, he "cannot assert it as a basis of error on appeal."[2] This is so even though defendant's claim involves a constitutional right.[3] And while the Court may nevertheless choose to consider a claim raised for the first time on appeal,[4] we do not find it appropriate to do so here.[5] Neither is this a case where the plain error rule is applicable. The criteria which give rise to the application of the doctrine but which are lacking here is twofold. The error must be obvious ("plain"), and it must be harmful.[6]

■ Defendant supports his claim of plain error upon this Court's decision in *State v. Copeland*,[7] which ruled that application of subsections (c) and (d) of section 77–35–21.5 to mentally ill criminal defendants violates due process under Utah's constitution. *Copeland* was decided on December 8, 1988. However, the sentencing hearing in this case (at which subsection (b) was considered) occurred prior thereto on June 14 and 15, 1988. In essence, then, defendant's plain error claim is that the trial court should have recognized the unconstitutionality of subsection (b) at least in part based upon the rationale offered against other subsections of the statute in a case decided almost six months *after* the trial court held its hearing on this matter. This contention is thus without merit.

Defendant next claims that the court erred in sentencing him to the state prison instead of the state hospital. Specifically, he asserts that the court erred in (1) "excluding all personality disorders from the definition of mental illness" under subsection (a); (2) concluding under subsection (b) that there was insufficient evidence to find that defendant poses any immediate physical danger to others or himself if placed in a correctional setting; and (3) misinterpreting subsection (e) in sentencing defendant to the state prison.

Utah Code Ann. § 76–2–305(4) (Supp. 1989) defines mental illness for the purposes of the statute at issue as

a mental disease or defect. A mental defect may be a congenital condition or one the result of injury or a residual effect of a physical or mental disease. Mental illness does not mean a personality or character disorder or abnormality manifested only by repeated criminal conduct.

Subsection –305(3) of the statute also provides in part:

A person who is under the influence of voluntarily consumed or injected alcohol, controlled substances, or volatile substances at the time of the alleged offense is not excused from criminal responsibility on the basis of mental illness.

In its findings of fact and conclusions of law, the trial court stated:

---

1. Subsections (4)(c) and (4)(d) of this statute were found unconstitutional in *State v. Copeland*, 765 P.2d 1266, 1272 (Utah 1988).

2. *State v. Van Matre*, 777 P.2d 459, 463 (Utah 1989) (citation omitted).

3. *See id.* (due process violation claimed); *State v. Pierce*, 655 P.2d 676, 677 (Utah 1982) (per curiam) (violation of right against self-incrimination claimed).

4. *Pierce*, 655 P.2d at 677.

5. *See Copeland*, 765 P.2d at 1272.

6. Utah R.Evid. 103(d); *see State v. Eldredge*, 773 P.2d 29 (Utah 1989); *State v. Verde*, 770 P.2d 116 (Utah 1989).

7. 765 P.2d 1266.

2. With regard to subsection (a) of Section 77–35–21.5(4), the Court finds that the defendant is mildly to moderately mentally retarded. Further, that mental retardation is a mental defect as defined in Section 76–2–305(4) and that therefore the defendant has a statutory mental illness.

3. The Court finds that the defendant has several personality disorders and tends to abuse drugs and alcohol, conditions which do not constitute mental illness as defined by Section 76–2–305(4).

4. The Court further finds that the defendant has no mental illnesses as defined in [Section] 76–2–305(4) other than the mental retardation described in paragraph 2 above.

Defendant contends that the court erred in failing to consider his personality disorders as mental illnesses under subsection (a). Specifically, he surmises that the court concluded that the phrase in subsection 76–2–305(4) "manifested only by repeated criminal conduct" modified only the term "abnormality" and that this provision thus excludes *all* personality and character disorders from the definition of mental illness. Defendant urges the determination that the court erred in not concluding that he was mentally ill as a result of his personality disorders in addition to the conclusion that he is mentally ill since he suffers from mental defects.

■ Even assuming, however, that defendant's claim is accurate [8] and that the court could have properly found in reference to subsection (a) that defendant was mentally ill based upon additional grounds, any error that occurred was harmless. The doctors from the state hospital agreed with the court's finding that the state hospital was not the appropriate place to confine defendant, and given the fact that defendant has not otherwise shown that the trial court erred in concluding that he was not an appropriate candidate for hospitalization under subsections 77–35–21.5(4)(b) and (e) in that he did not pose an

immediate physical danger to others or to himself and that the hospital could provide "custody that is adequate and appropriate to the defendant's conditions and needs," we cannot conclude that any error is substantial and prejudicial such that there is a reasonable likelihood that in its absence there would have been a more favorable result for defendant.[9] Thus, defendant's claim is without merit.

■ Defendant's claim that the court erred in concluding that he was not in immediate physical danger to others or to himself if placed in a correctional or probation setting is similarly without merit. The trial court heard testimony on the issue of whether, based upon his mental illnesses, defendant would be in any immediate physical danger if placed at the state prison. Two doctors testifying for the defense expressed concern regarding defendant's prison incarceration and the fact that they considered defendant to have a "dependent personality" which may make him easily led and abused by others. In contrast, several doctors from the state hospital testified that defendant was not an appropriate candidate for confinement at that institution. And two correctional officers testified that defendant was a model inmate during incarceration in the county jail. In sum, the trial court had before it significant evidence to demonstrate that because of his mental illness defendant posed no "immediate physical danger" to himself or others if confined in prison. Instead, the court specifically found that defendant would not pose an immediate danger and that he would be able to function at the state prison based upon evidence adduced with regard to his past incarceration and present confinement in the Salt Lake County Jail. There is no indication that these findings are clearly erroneous.

■ Finally, the trial court concluded under subsection (e) of section 77–35–21.5(4):

[T]he Utah State Hospital is not a suitable facility for providing the defendant

---

**8.** *See generally State v. Murphy,* 760 P.2d 280, 284–85 (Utah 1988) (discussion of distinctions between mental illness and mental retardation).

**9.** *State v. Tillman,* 750 P.2d 546, 555 (Utah 1987).

with the treatment, care and *custody* that is adequate and appropriate to the defendant's conditions and needs, because no therapies are available to treat the defendant's problem of retardation which is permanent. Further, that the Utah State Hospital cannot provide the secure custody necessary for the defendant who stands convicted of two homicides in Salt Lake County, is awaiting sentencing in Davis County on a subsequent Second Degree Homicide, and who tends to abuse drugs and/or alcohol.

Defendant contends that this finding was erroneous because (1) the trial court interpreted subsection (e) as requiring that the mental illness must be completely curable in order to qualify the patient for sentencing to the hospital; (2) the hospital is able to treat defendant's personality disorders; (3) subsection (e) does not require the court to choose between sentencing defendant to the hospital or the prison; and (4) there is no statutory basis for the court's consideration of the danger posed by defendant in the state hospital. We need not address defendant's contentions since there is no evidence that the trial court erred in concluding that the state hospital could not adequately provide for defendant's custody as expressly required by statute. As we noted in *Copeland*, "[I]f neither the hospital nor any other facility can provide 'treatment, care, and custody that is adequate and appropriate to the defendant's conditions and needs,' placement in such a facility may not be justified because of the additional security burdens it would impose." [10] The evidence supports the trial court's finding that the hospital was not the appropriate place, given defendant's custody concerns. Therefore, the trial court did not err in so concluding.

We have reviewed defendant's other claims and find them to be without merit. The judgment and sentences are affirmed.

HOWE, Associate C.J., and ZIMMERMAN, J., concur.

DURHAM, Justice (concurring in the result):

I concur in the result but write separately to underscore the failure of the Utah Legislature, Department of Corrections, and Department of Social Services to adequately address the "long-festering problem" of mentally retarded and mentally ill criminal offenders. *State v. Murphy*, 760 P.2d 280, 287 (Utah 1988). In *State v. Murphy*, this Court sketched the history of the state's inaction and noted that as early as 1965, the Governor's Advisory Committee on Mental Retardation urged the state to establish "a separate facility to handle retarded delinquents and criminals whose problems require special attention and treatment." *Id.* at 287 (quoting *Mental Retardation, a Comprehensive Plan for Utah* 9–23 (1965)). I repeat what I wrote in that case: "This state has failed dramatically in its moral obligation to provide adequate support systems for adults disabled by mental retardation, as well as by mental illness, who enter the criminal justice system. . . . Our laws in this area *are* useless and archaic, and our policies do not prevent injustice." *Id.* at 289 (concurring opinion) (emphasis in original); *see also id.* at 290 (Zimmerman, J., concurring).

The apparent misapprehension by the trial judge in this case of the term "treatment" compounds the more general problem of inadequate facilities for mentally retarded offenders. Even where a complete cure is unavailable, treatment of mental retardation or mental illness serves to improve the quality of an offender's life and can include behavior modification, social skills education, and self-maintenance training, as well as drugs or psychotherapy. Our society routinely treats patients who have chronic physical and psychological diseases, often acknowledging that the best outcome of treatment or therapy will not be total cure, but only some alleviation of discomfort or increase in function. The policy underlying our criminal commitment statutes is that people who are suffering from chronic conditions should receive appropriate treatment to enhance their capac-

---

**10.** 765 P.2d at 1272 (quoting § 77–35–21.5(4)(e)).

ity to function normally and to protect them from abuse, suffering, and deterioration. The statutes seek to advance this policy by placing such people in treatment facilities rather than in prisons. This Court concluded unanimously in *McClure v. State* that "[t]he effects of mental retardation may be ameliorated with education and training...." 737 P.2d 1001, 1003 (Utah 1987). It is thus illogical to conclude, as the trial court apparently did here, that "treatment" for mental retardation is impossible within the meaning of section 77–35–21.5(4)(e) because the condition cannot be cured. The statutory requirement of "treatment ... that is adequate and appropriate to the defendant's conditions and needs," Utah Code Ann. § 77–35–21.5(4)(e) (Supp.1989), is satisfied by management of a person's behavior and symptoms even where, as with mental retardation, the underlying condition is incurable.

The trial judge in this case was apparently influenced by testimony that there are psychiatrists at the prison who could counsel defendant. In the first place, there is no reason to believe that a prison psychiatrist is likely to be particularly skilled in dealing with mental retardation. In the second place, the mere possibility of counseling in prison should not be confused with the guarantee of counseling in the state hospital or other treatment facility. Whereas placing defendant in a treatment facility would ensure the provision of psychological and/or rehabilitative attention, the judge's recommendation of special treatment for defendant in prison is not likely to have any effect at all; it is merely a recommendation which prison officials will either follow or ignore at their complete discretion. The trial court loses all jurisdiction over persons sentenced to prison.

I wrote in *State v. Murphy* that our current legislative policies do not prevent injustice. In light of the current case, in which a man with an IQ of sixty-nine at most is sentenced to prison in the face of testimony that he is highly vulnerable to exploitation and on the ground that defendant's retardation cannot be treated or cured, I contemplate a deeper problem. Where the state fails to provide appropriate custodial facilities and services for offenders who are mentally retarded and then refuses to hospitalize them for treatment although similarly situated mentally *ill* offenders would be hospitalized, questions of fundamental fairness under the state and federal constitutions may arise.[1] Such questions have not been raised and briefed here.

STEWART, J., concurs.

---

1. Likewise, the application of article XIX, section 2 of the Utah Constitution might be argued. *See, e.g.,* Neuborne, *State Constitutions and the Evolution of Positive Rights,* 20 Rutgers L.J. 881 (1989); Collins, *Reliance on State Law: Protect-* *ing the Rights of People with Mental Disabilities,* 13 Vt.L.Rev. 305 (1988); Perlin, *State Constitutions and Statutes as Sources of Rights for the Mentally Disabled: The Last Frontier?,* 20 Loy.L. A.L.Rev. 1249 (1987).