STATE of Utah, Plaintiff and Appellee,

v.

**Homer Lewis VAN MATRE, Defendant and Appellant.**

No. 20640.

Supreme Court of Utah.

June 30, 1989.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Thomas J. McCormick, Curtis C. Nesset, Salt Lake City, for defendant and appellant.

DURHAM, Justice:

Defendant appeals from a jury verdict finding him guilty of sexual abuse of a child and sodomy on a child. On appeal, defendant challenges the expert testimony offered by the prosecution. He also claims that the State failed to comply with Utah Code Ann. § 76–5–411 (Supp.1983),[1] challenges that statute's constitutionality, challenges the constitutionality of the investigatory techniques used by the State, and claims that the evidence upon which the guilty verdict was based was insufficient. We reverse defendant's convictions and remand for a new trial.

Defendant lived with the victim, A.W., an eight-year-old girl, and her mother for five years. A.W.'s mother is divorced from her father, who was seeking custody of A.W. at the time of the alleged abuse.

A.W. was removed from her home and taken into protective custody after her father alleged that she had been sexually abused. A team of investigators interviewed A.W., who initially denied having been abused, but later graphically described details of several incidents of sexu-

---

**1.** Defendant was tried in 1984; section 76–5–411 was substantially amended in 1985. 1985 Utah Laws ch. 74, § 2.

al conduct with defendant. Among other incidents, A.W. alleged that defendant had taken her out of school early on February 14, 1984, and had oral and vaginal sex with her. She said defendant often took her out of school early in order to have sexual contact with her at home before they picked her mother up from work. A.W. said that she did not tell anyone about the abuse because defendant threatened that she would be separated from her mother if she did.

At trial, a pediatrician who had examined A.W. testified that her introitus, the opening to the vaginal vault, had been stretched beyond the maximum range for children her age. Several experts who had interviewed and counseled A.W. repeated her version of events and gave their opinions that she was a victim of sexual abuse. A.W.'s school teacher testified that defendant had removed A.W. from school early on February 14, 1984, and that school records indicated that he had also done so on two previous occasions in January. Defendant testified, denying the abuse. A.W.'s mother testified that she believed A.W. might have been coerced by investigators into making the allegations of abuse. A.W.'s mother also testified that she was presently uncertain whether the allegations were true, but had believed them in the past. She attempted to explain the physical evidence of abuse with testimony that A.W. had been sexually molested at an earlier time by neighborhood children, but she gave no details or dates; her information regarding that incident came from defendant. A.W. recanted her accusations against defendant in her trial testimony. She explained that she had made up stories in order to please the investigators so that they would let her return home. In their testimony, however, the investigators denied any coercion of A.W.

*Expert Testimony*

Several expert witnesses testified on behalf of the State and offered their opinions that A.W. had been sexually abused. At least one expert opined that defendant was responsible for the abuse.

Dr. William Palmer, the pediatrician who examined A.W., testified that it was highly unlikely that she had been coached and that he believed she had been sexually abused. Further, he stated, "[A]s a matter of fact those children who make those kind[s] of comments [descriptions of sexual conduct] are usually telling the truth. In my experience." He stated that his opinion was "well substantiated by lots of studies." He also stated that he believed defendant had abused A.W. Kelly Powers, a social worker who had worked with A.W., testified that in her professional opinion, A.W. had been abused. Dr. Barbara Snow, who was then clinical director of the Intermountain Sexual Abuse Treatment Center and had interviewed A.W., said that because of what A.W. had told her and the consistency of A.W.'s behavior with other sexually abused children, it was her opinion that A.W. had been abused. She stated that her clinic had "never had a child who gave false testimony" and that "[c]hildren typically don't lie." Further, she stated that A.W. could not have been coached because of the graphic nature of and detail in her statements.

■■■■ Defendant argues on appeal that the trial court erred when it allowed the experts to offer their opinions that A.W. had been sexually abused. Defendant claims that it was reversible error to permit the experts to assess A.W.'s credibility and to testify that A.W. matched certain profile characteristics of a typical sex abuse victim. We agree.

In *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), this Court examined the propriety of certain expert witness testimony in child sexual abuse cases. We concluded, among other things, that experts may not give a direct opinion about the truthfulness of a child's description of the incidents of sexual abuse. We determined also that the inherent reliability of the scientific principles and techniques upon which credibility appraisals and profile-based opinion testimony are predicated must be determined before a trial court can admit that evidence. Examination of the record in the instant case reveals that there was no evi-

dence before the trial court from which a determination of reliability could be made. Thus, we conclude that the trial court erred when it permitted the experts to give their opinions on abuse. We find that absent these evidentiary errors, there is a reasonable likelihood of a result more favorable to the defendant and thus we reverse his convictions and remand the matter for a new trial. *State v. Rimmasch,* 775 P.2d at 408; *State v. Verde,* 770 P.2d 116, 122 (Utah 1989); *State v. Bell,* 770 P.2d 100, 105–06 (Utah 1988); *State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987); Utah R.Evid. 103; Utah R.Crim.P. 30 (codified at Utah Code Ann. § 77–35–30 (1982)).

## Section 76–5–411

■ Although we reverse defendant's convictions, we address the following issues because of the likelihood that they will arise on retrial. At the time of defendant's trial, Utah Code Ann. § 76–5–411 provided:

(1) Notwithstanding any other provision of law or rule of evidence, a child victim's out of court statement regarding sexual abuse of the child is admissible into evidence though it does not qualify under an existing hearsay exception, so long as:

(1) the child testifies; or (2) in the event the child does not testify, there is other corroborative evidence of the abuse. Before admitting such a statement into evidence, the judge shall determine whether the general purposes of the evidence are such that the interest of justice will best be served by admission of the statement into evidence. In addition, the court shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the reliability of the child witness, in deciding whether to admit such a statement.

(2) A statement may be admitted under this exception only if the proponent

of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with an opportunity to prepare to meet it, his intention in offering the statement, and the particulars of it.

(3) For purposes of this section, a child is a person under the age of ten.

The State presented the testimony of Dr. Barbara Snow, who gave expert testimony and repeated A.W.'s account of the abuse and accusation of defendant. Defendant objected before Dr. Snow testified, stating that the notice provided to him by the State consisted only of Dr. Snow's name and address and therefore it did not meet the prerequisites to admission set out in section 76–5–411(2). That section provides for admission of otherwise inadmissible hearsay statements

only if the proponent [of the statement] makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with an opportunity to prepare to meet it, his intention in offering the statement, and the particulars of it.

The notice provided by the State did not meet that standard, and Dr. Snow's testimony as to A.W.'s statements should not have been admitted.

Defendant argues that the trial judge erred by not making a specific finding concerning whether "the interest of justice will be best served" by the admission of the hearsay. This Court held in *State v. Nelson,* 725 P.2d 1353 (Utah 1986),[2] that such a finding is required. However, the defendant in this case did not object to the lack of findings at trial; therefore, he is not entitled to assert the lack of specific and/or written findings as a ground for error on appeal.

■ Defendant also asserts that section 76–5–411 always requires independent corroboration of the abuse before the hearsay may be admitted. He argues that the admission of A.W.'s testimony without corroboration constituted a violation of due process of law. Defendant misreads the

**2.** In *Nelson,* we discussed other factors that the trial court should consider; further, in order to facilitate judicial review, we required written

findings as to each of the factors listed in the statute. 725 P.2d at 1355–56 n. 3.

statute, which requires independent corroborating evidence of abuse only "in the event the child does not testify." *See Nelson*, 725 P.2d at 1355. The child in this case testified, although she did not repeat her accusation of defendant in her testimony.

Defendant attacks the constitutionality of section 76–5–411 on its face and as it was applied to him. He argues first that the statute violated his right to confrontation. We have previously considered and rejected that argument. In *Nelson*, we explained, "The essence of the confrontation right is the opportunity to have the accusing witness in court and subject to cross-examination.... If the witness is physically present and subject to cross-examination ... these values would seem to be satisfied." 725 P.2d at 1356. The defendant in this case had an opportunity to confront the victim and indeed was successful in obtaining her recantation of statements made to the investigators. The confrontation clause does not require the jury to believe A.W.'s recantation. In fact, the jury was given some reason to disbelieve it; A.W. had been returned to her mother's custody by the time of trial, and both A.W. and her mother appeared to be emotionally attached to defendant.

The confrontation clause does not always require the declarant to take the stand. As we explained in *Nelson*, hearsay statements may offend the confrontation clauses of both the state and federal constitutions unless they exhibit "particularized guarantees of trustworthiness." 725 P.2d at 1356 n. 3. Section 76–5–411(1) and our opinion in *Nelson* specifically address this issue by requiring the trial judge to make a consideration of reliability. Thus, the confrontation right is not universally or automatically violated by the statute.

Nor do we find section 76–5–411 unconstitutionally vague, as defendant argues. The constitutional prohibition against vagueness requires that "offenses must be defined with sufficient precision to permit uniform interpretation and application by those charged with enforcing them." *State v. Fontana*, 680 P.2d 1042, 1050 (Utah 1984). Section 76–5–411 does not define an offense; rather, it is a rule of evidence and procedure for interpretation by the court. Therefore, a vagueness challenge to the statute is not appropriate. Moreover, the statutory language, when combined with our clarification of the reliability requirement in *State v. Nelson*, is quite clear.

*Investigatory Methods*

Defendant claims that he was denied due process of law by the investigatory techniques used by the police and social service agencies that handled the interviews of the victim. While we do not preclude a due process attack based on investigatory procedures, that issue is not properly before us in this case. Defendant did not raise the issue below and therefore cannot assert it as the basis of error on appeal. *State v. Steggell*, 660 P.2d 252, 254 (Utah 1983). More importantly, he has failed to create a meaningful record as to the investigatory procedures used. A.W.'s mother claimed that A.W. had been "coerced," but did not substantiate the claim. The investigators, on the other hand, testified that they used only proper, noncoercive investigatory techniques and merely created an environment in which A.W. felt comfortable enough to tell the truth. Without a proper record against which to review defendant's claimed error, we cannot determine the truth of these competing assertions.

*Sufficiency of Evidence*

Lastly, defendant attacks the sufficiency of the evidence upon which his convictions were based. Because we reverse his convictions and remand for a new trial, we need not address this issue.

Defendant's convictions are reversed, and the case is remanded for a new trial.

HALL, C.J., HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.