**STATE of Utah, Plaintiff and Appellee,**

v.

**Tony W. MATSAMAS, Defendant and Appellant.**

No. 880048.

Supreme Court of Utah.

March 6, 1991.

---

Debra K. Loy and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Tony W. Matsamas appeals from his jury convictions of rape of a child and sodomy on a child. *See* Utah Code Ann. §§ 76–5–402.1, –403.1 (1990). Matsamas argues, inter alia, that his convictions should be reversed because the trial court failed to make proper findings under section 76–5–411(2) of the Code before admitting evidence of the child victim's hearsay statements. Utah Code Ann. § 76–5–411(2) (1990). We agree and reverse and remand.

For that reason, we need not reach defendant's other arguments.

On February 23, 1986, four-year-old S.N. and her family attended a party at the Matsamas home, where defendant Tony W. Matsamas resided with his parents. Matsamas was present at the party but stayed in his downstairs bedroom for most of the evening.

S.N.'s mother testified at trial that after the party, S.N. was very quiet and insisted that on the way home, her mother sit in the back seat of the car with her so that S.N. could sit on her mother's lap. S.N.'s mother further testified that a few days later, S.N. observed her sister drinking a beer and said, "Oh beer. Yucky. I hate that stuff." When S.N.'s mother asked S.N. when she had tasted beer, S.N. replied, "Little Tony gave it to me." The mother testified that later that day, S.N. stated that Matsamas had "touched" her but refused to say anything more. The next day, S.N. again told her mother that Matsamas had touched her and that he had "hurt" her.

S.N.'s mother called the Rape Crisis Center and was referred to Primary Children's Hospital. S.N. subsequently was referred to Jan Foutz, a clinical social worker. S.N. also met with Dr. Ann Tyler, a psychologist, and was examined by Dr. Thomas Jones, a gynecologist. Dr. Tyler concluded that the child had been sexually assaulted, and Dr. Jones found such sexual assault likely.

Matsamas was charged with one count of rape of a child under the age of 14 in violation of section 76–5–402.1 of the Code and one count of forcible sodomy upon a child under the age of 14 in violation of section 76–5–403.1 of the Code. *See* Utah Code Ann. §§ 76–5–402.1, –403.1 (1990).

At trial, held October 13th to October 20th of 1987, S.N. testified that Matsamas had "touched her." She was given anatomically correct dolls to use in describing where she had been touched. When asked where she had been touched, she pointed to the genital area and to the mouth of the female doll. When asked what she had

been touched with, she pointed to the genital area of the male doll.

S.N.'s mother testified that S.N. told her that "Little Tony" had touched her at the party and that she had nightmares about him "putting himself" in her mouth.

The social worker who interviewed S.N., Ms. Foutz, testified that S.N. told her that at the party, "Little Tony" had pinched her, that he touched her with his hand underneath her underwear, and that he had touched her vaginal area with his penis with a rubbing or poking motion which hurt her. Ms. Foutz also testified that S.N. said that "Little Tony" had pulled his penis off because she had told him to and that he had got a giant rock from outside and "landed it" on her.

Dr. Tyler testified that S.N. told her that at the party, "Little Tony" had put his finger in her vagina, that he had touched her with his "tallywhacker," and that "Little Tony" was lying about something because he said that he hadn't hurt her.

Dr. Jones testified that he examined S.N. for evidence of sexual abuse on March 28, 1986, and found that she was carrying genital chlamydia, a disease almost invariably transmitted sexually. However, he further testified that other than the presence of the disease, S.N.'s vagina did not show physical evidence of intercourse.

The jury found defendant guilty of rape of a child and sodomy on a child, both first degree felonies. Matsamas was sentenced to a minimum mandatory prison term of ten years to life on each count. The two sentences were to run concurrently.

On appeal, Matsamas contends that the trial court committed reversible error when it allowed Ms. Foutz, Dr. Tyler, and S.N.'s mother to relate the hearsay statements S.N. had made to them about the alleged incident. He argues that the trial court failed to make the express findings required by subsection 76–5–411(2) of the Code prior to the admission of hearsay statements by a child victim of alleged abuse.

Section 76–5–411 of the Code states in relevant part:

(1) Notwithstanding any rule of evidence, a child victim's out of court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception, if:

(a) the child is available to testify in court or as provided by Subsection 77–35-15.5(2) or (3);

(b) in the event the child is not available to testify in court or as provided by Subsection 77–35-15.5(2) or (3), there is other corroborative evidence of the abuse; or

(c) the statement qualifies for admission under Subsection 77–35-15.5(1).

(2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.

Utah Code Ann. § 76–5–411 (Supp.1986) (amended 1990).

In *State v. Nelson,* 725 P.2d 1353 (Utah 1986), we discussed the requirements of subsection (2), which was then the last two sentences of subsection (1), and emphasized their importance:

The admission of hearsay statements may offend the confrontation clauses of both the state and federal constitutions unless such hearsay statements exhibit particularized guarantees of trustworthiness. Subsection 76–5–411(1) [now subsection (2)] specifically addresses the trustworthiness issue by listing a number of factors the trial judge must consider before admitting such evidence. *These factors are intended to prompt a comprehensive inquiry into all the circumstances surrounding the child's out of court statement in order to determine its reliability.* It is noteworthy that subsection 76–5–411(1) requires a determination of reliability without regard to whether the hearsay declarant is available. *The importance of such an inquiry cannot be overemphasized.*

In any case involving a proffer of hearsay statements by a child victim, the trial court *must* make an in-depth evaluation of the proposed testimony as required by subsection 76–5–411(1). This inquiry may require consideration of some matters not specifically mentioned in the statute. For example, to determine the reliability of the statement, a court should consider how soon after the event it was given, whether the statement was spontaneous, the questions asked to elicit it, the number of times the statement was repeated or rehearsed, and whether the statement is reproduced verbatim in court, *viz.,* tape recording, video tape, or otherwise. *The trial court should then enter findings and conclusions regarding each of the factors listed in the statute to explain its reasons for admitting or excluding the testimony.* Only when these steps are taken can a defendant be assured that the statutorily required appraisal has been made. Further, only when such steps are taken can this Court properly perform its appellate review function.

*Nelson,* 725 P.2d at 1356 n. 3 (bracketed material and emphasis added) (citations omitted).

In *Nelson,* we stated that we would hold trial courts accountable for making these findings in cases tried after *Nelson* was decided. *Id.* at 1356; *see also State v. Fulton,* 742 P.2d 1208, 1218–19 (Utah 1987). And our post-*Nelson* decisions stressed the critical nature of the requirement of findings on reliability. *See State v. Lenaburg,* 781 P.2d 432, 436 (Utah 1989); *State v. Lamper,* 779 P.2d 1125, 1129 (Utah 1989); *State v. Webb,* 779 P.2d 1108, 1112 (Utah 1989); *State v. Van Matre,* 777 P.2d 459, 461–62 (Utah 1989).

■ In the present case, the admission of S.N.'s hearsay statements was first questioned in a motion in limine before Judge Dee in January of 1987, over nine months before trial and four months after *Nelson* was decided. There, defendant's counsel argued that S.N.'s hearsay testimo-

ny should not be allowed under section 76-5-411 because it violated his constitutional right to confront the witness. The State argued that because there was corroborative evidence of the abuse, the court should allow the hearsay testimony. Judge Dee agreed with the State and denied defendant's motion to suppress the hearsay.

The next time the issue was raised was at trial before Judge Uno. At the beginning of the trial, defendant's counsel made a motion to the court asking it to make the findings required under section 76-5-411. The court denied the motion, stating that it would not rule on the admissibility of any testimony until that testimony was before the court during the trial. Just before the first witness was called to the stand, defendant's counsel again asked the court to make the findings. Judge Uno again denied defendant's motion.

Later in the trial, the State asked Ms. Foutz to testify as to who had abused S.N. Defense counsel objected to the question, stating that the witness would base her answer on the hearsay testimony of S.N. Defense counsel argued that the witness could not answer the question until the court had made the proper findings under section 76-5-411(2) regarding S.N.'s hearsay statements. The State responded that it had met the requirements of section 76-5-411 because the child was available and there was corroborating evidence of the abuse. Defendant then pointed out to the court the additional requirements of section 76-5-411(2) that had to be met even if the child was present.

The court, after hearing these arguments, stated:

> [T]aking into consideration the age and maturity of the child, the nature and duration of the abuse, ... the relationship of the child to the defendant, ... the reliability of the assertion and of the child.... [T]hat hearsay statement that may be testified to, I think would assist not only the court, but the jury in terms

of making a determination as to whether this actually took place or not.

The judge then admitted the hearsay. Still later in the trial, defense counsel objected to the admission of S.N.'s hearsay statements made to Dr. Tyler and Ms. Newman. Again, Judge Uno overruled the objection.

Viewing Judge Uno's ruling in light of section 76-5-411(2) and *Nelson,* we conclude that the court erred by not making the necessary reliability findings. In the brief statement purporting to explain its decision to admit the hearsay, the court merely quoted the terms of section 76-5-411(2) and then ordered the testimony admitted. It made no specific findings as to what the facts relevant to reliability were nor explained how these facts supported the conclusion of admissibility. The only reason the court gave for admitting the testimony was that it might help the jury and the court decide what had occurred. Thus, instead of making specific findings and conclusions demonstrating a careful appraisal of all factors relevant to a determination of statutory and constitutional reliability, the court admitted the testimony based only on the supposed need for it. This was clear error.[1]

■ The State implicitly acknowledges that *Nelson* was not followed. However, it argues that even if the trial court erred, defendant waived his right to appeal the admission of the hearsay testimony of Ms. Foutz, Dr. Tyler, and S.N.'s mother because defense counsel did not object to the testimony until trial. The State contends that this is too late for the lodging of such an objection under rule of criminal procedure 12(b)(2). Utah R.Crim.P. 12(b)(2). Under 12(b)(2), a party who wishes to object to the admissibility of evidence must do so at least five days prior to trial. A party who fails to make a clear and timely objection waives the right to raise the issue at the appellate level. *See State v. Van Matre,* 777 P.2d 459, 463 (Utah 1989); *State v. Eldredge,* 773 P.2d 29, 35 (Utah

---

1. For an admirably clear explanation of the proper way for a trial judge to make the necessary section 76-5-411(2) reliability determination before admitting an alleged child victim's hearsay testimony, see the Utah Court of Appeals decision in *State v. Reiners,* 803 P.2d 1300 (Utah Ct.App.1990).

1989); *State v. Fulton,* 742 P.2d 1208, 1214–16 (Utah 1987).

■ The problem with the State's argument is that whatever the requirements of rule 12(b)(2), Judge Uno chose not to treat defendant's failure to raise the issue with him before the first day of trial as a waiver. Instead, he proceeded to consider the claim. Therefore, the objection was preserved for appeal. The judge effectively waived the requirements of rule 12. *See* Utah R.Crim.P. 12(b)(2).[2]

■ The State next argues that any error was harmless. We only reverse a verdict where the lower court committed harmful error. *See, e.g., State v. Van Matre,* 777 P.2d 459, 461–62 (Utah 1989); *State v. Rimmasch,* 775 P.2d 388, 407 (Utah 1989); *State v. Verde,* 770 P.2d 116, 121 (Utah 1989). An error is harmful if there is "a reasonable likelihood that the error affected the outcome in the trial court." *Verde,* 770 P.2d at 121. Phrased differently, the question is whether our confidence in the verdict has been undermined. *State v. Knight,* 734 P.2d 913, 920 (Utah 1987); *see also State v. Lenaburg,* 781 P.2d 432, 437 (Utah 1989); *State v. Nelson,* 777 P.2d 479, 481 (Utah 1989).

■ In the present case, the trial court allowed the hearsay testimony into evidence on the stated basis that the evidence would "assist" the jury and court in understanding "whether this took place or not." Plainly, the trial court placed some importance on the hearsay. Moreover, the other evidence of the two crimes charged, sodomy and rape, was slight. The child did have a vaginal infection. However, her testimony about defendant's conduct was general. The hearsay may have been essential to prove the necessary elements of at least the crime of rape, which includes the requirement of penetration. *See* Utah Code Ann. § 76-5-407(2) (1990); *see also State v. Simmons,* 759 P.2d 1152, 1154 (Utah 1988); *State v. Gehring,* 694 P.2d 599, 600 (Utah 1984). Under these circumstances, we are unable to conclude that the admission of the extensive hearsay testimony of four adults that was explicit in nature constitutes harmless error. *See Rimmasch,* 775 P.2d at 407–08. We therefore reverse the conviction.[3]

Defendant makes a number of other arguments on appeal. He asserts that the prosecution failed to produce discovery in a timely fashion, that the prosecution failed to reveal exculpatory evidence, that the trial court improperly admitted certain types of expert testimony, and that the trial court considered improper factors in making its sentencing decision. Although these claims may have some merit, we need not address them because we have already reversed and remanded the case on defendant's first contention. Further, many of these issues are now moot, and those which are not can be addressed on retrial.

There is one matter upon which we comment because of the likelihood of retrial and because it bears on all cases where an effort is made to introduce out-of-court hearsay statements by alleged child victims under section 76-5-411. The United States Supreme Court decision in *Idaho v. Wright,* — U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), handed down this past summer, suggests a limitation on the factors a court may consider in determining whether "the interest of justice" will best be served by the admission of such hearsay statements. Specifically, *Wright* held that when a court is determining whether there has been an

---

2. Rule 12(b)(2) states in pertinent part:

    (b) Any defense, objection or request, including request for rulings on the admissibility of evidence, which is capable of determination without the trial of the general issue may be raised prior to trial by written motion. The following shall be raised at least five days prior to the trial:

    ...;

    (2) motions concerning the admissibility of evidence[.]

Utah R.Crim.P. 12(b)(2).

3. Because we find a failure to comply with section 76-5-411 and find the error not to be harmless under the standard used to appraise nonconstitutional error, there is no need to decide whether some stricter federal or state constitutional error analysis might be required under other circumstances. *See State v. Tuttle,* 780 P.2d 1203, 1213 (Utah 1989); *State v. Bell,* 770 P.2d 100, 106 n. 12 (Utah 1988); *State v. Hackford,* 737 P.2d 200, 204 (Utah 1987).

adequate showing of the "particularized guarantees of trustworthiness" required by the confrontation clause of the sixth amendment, *see* U.S. Const. amend. VI, it may not consider the presence of evidence corroborating the truth of the matter asserted in the proffered hearsay. Rather, the court is limited to examining "the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright,* — U.S. at ———, 110 S.Ct. at 3148–49, 111 L.Ed.2d at 655–56.

■ The *Wright* decision has obvious implications for admissibility determinations made under section 76–5–411(2). First, in any case where the declarant is found "unavailable" within the meaning of section 76–5–411(1)(b), *see State v. Webb,* 779 P.2d 1108, 1112–13 (Utah 1989), the trial court may not rely on the presence of corroborating evidence in determining under section 76–5–411(2) that the "interest of justice" warrants admission of that hearsay. This is because we have construed section 76–5–411(2) as demanding a determination of reliability that will at least satisfy federal and state confrontation clause concerns. *See State v. Nelson,* 725 P.2d 1353, 1355–56 n. 3.

■ A second consequence of *Wright,* and the limitation it imposes on a constitutional reliability determination, is that trial courts and counsel can no longer rely on language in some of our opinions suggesting that the presence of corroborative evidence may be among the factors considered in determining the reliability under 76–5–411(2) and hence, the admissibility of hearsay statements, even if the witness is not unavailable. *See generally State v. Webb,* 779 P.2d 1108 (Utah 1989); *State v. Van Matre,* 777 P.2d 459 (Utah 1989); *State v. Loughton,* 747 P.2d 426 (Utah 1987); *Nelson,* 725 P.2d 1353. If we are to construe section 76–5–411(2) as constitutional, we cannot legitimately read its language, which requires an "interest of justice" reliability determination in every case where child victim hearsay is offered, to permit the consideration of corroborative evidence where the child is available to testify but to prohibit it where the child is unavailable. Therefore, we conclude that under section 76–5–411(2), the presence of evidence tending to corroborate the truth of the matter asserted in hearsay statements of an alleged child victim can never be considered by a court in making the "interest of justice" reliability determination.

We also note that the *Wright* majority specifically declined to address the question of whether the confrontation clause might have application to the admission of hearsay statements of a child witness who was present at trial. *Wright,* — U.S. at ———, 110 S.Ct. at 3146, 111 L.Ed.2d at 652. In the past, we have assumed that if a child witness is present and subject to cross-examination, the confrontation clause's values are satisfied. *See Nelson,* 725 P.2d at 1356. The *Wright* opinion may be indicating that when the hearsay statements are of children, the confrontation clause may require more than where adults are concerned.

In light of the foregoing, prudence bolsters our construction of section 76–5–411(2) as excluding consideration of corroborating evidence even where the alleged child victim is present. If the presence of such evidence is not considered in determining admissibility, subsequent changes by the United States Supreme Court in the previously accepted view of the confrontation clause's requirements are less likely to result in the overturning of convictions based on the admission of hearsay testimony.

Returning to the present case, we note that the principal factor relied upon by the State in arguing to Judge Uno that he should admit the various hearsay statements was the presence of corroborative evidence in the form of a vaginal infection. We cannot tell if Judge Uno relied upon this evidence, because he did not make the necessary section 76–5–411(2) findings. If this matter is presented again on retrial, the court should not consider the presence of any such corroborative evidence in ruling on the admissibility of the hearsay statements.

Finally, we note our deep concern about the rising number of crimes against children. There is no other crime which shocks the conscience of society as does the sexual abuse of a helpless child. The physical and emotional trauma that results from these crimes can be devastating. However, it is because of the strong emotions which surround these cases that we must insure that trial proceedings are fair and that the rights of all concerned are protected. As we said in *Rimmasch*, the only occurrence worse than the sexual abuse of a child would be the conviction and incarceration of an innocent defendant based on "misleading and unreliable testimony." *State v. Rimmasch*, 775 P.2d 388, 390 (Utah 1989) (quoting Note, *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims*, 74 Geo.L.J. 429, 451 (1985)). The findings required by section 76–5–411 and by *Nelson* assure that the constitutional right of confrontation is not infringed and that a child's hearsay testimony admitted in a sexual abuse case is reliable. Thus, there must be strict adherence to the findings requirement. This is not a peripheral administrative concern, but one which goes to the core of the prosecution's fairness.

In this case, if the State had refrained from objecting to defendant's legitimate requests for the findings and if the trial court had properly made the findings which are clearly required by statute and case law, we might not be forced to take the action we do today. Reversed and remanded.

HALL, C.J., and HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, Justice (concurring):

I concur in the majority opinion. I write separately to emphasize one important factor that I believe a trial judge should consider in the reliability determination that must be made as to a child's hearsay statements, as required by Utah Code Ann. § 76–5–411.

Children's declarations concerning abuse may raise special problems of reliability. That is especially true when the adults concerned are involved in a custody dispute or for other reasons are antagonistic to each other. Accusations made by children may have such a reverberating clang as to all but drown out exculpatory evidence in the minds of jurors. For the most part, children, especially young children, do not lie, at least in the sense that gives rise to a judgment of moral culpability. However, they can misstate reality and even confuse imagination, fantasy, and · confabulation with reality, and sometimes not know that they have done so. Children may also perceive in a reasonably accurate way, but describe the perception in an unintentionally misleading manner. A child's inaccurate declaration may also result from psychological processes that have the appearance of accurate recall, but in reality are not. Discrimination between factually accurate and inaccurate statements can be difficult, and sometimes impossible. One important cause of unreliability may be a child's desire to please adults or avoid blame or guilt feelings. The willingness to give suggested answers to leading questions and thereby construct "facts" in response to a suggested scenario is not uncommon. Children—and sometimes adults—who accept such suggestions and transmute them to "facts" can "construct" a "memory" of those "facts" that becomes indistinguishable from reality in their minds.

To avert some of the threats to the fact-finding process that such difficulties pose, trial courts should require videotaping of interviews with social workers and psychologists who are regularly involved in dealing with child sex abuse issues so that a court has some way of determining whether a child's declarations could be the product of subtle coaching or suggestion. Videotaping is a procedure that is followed in many police departments and by many psychologists, and it certainly ought to be required by agencies that deal regularly with victims of child abuse. That is virtually the only way of determining whether a professional interviewer has in some way elicited unreliable evidence. *See generally State v. Bullock*, 791 P.2d 155, 161 (Utah 1989) (Stewart, J., dissenting). I realize

that sometimes it will not be possible or realistic to require videotaping, but when it can be done, it ought to be done. If the interview is not videotaped, that ought to be given significant weight in the reliability determination, especially when those declarations are crucial to a determination of guilt.