2002 UT 41

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kevin Lee PECHT, Defendant and Appellant.**

**No. 990537.**

Supreme Court of Utah.

April 26, 2002.

---

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, David M. Cole, Davis County, for plaintiff.

Scott L. Wiggins, Salt Lake City, for defendant.

DURHAM, Justice.

## INTRODUCTION

¶ 1 Defendant Kevin Lee Pecht appeals a judgment and conviction of two counts of

sodomy on a child and aggravated sexual abuse, both first degree felonies in violation of Utah Code Ann. §§ 76–5–403.1 and 76–5–404.1 (1999), respectively. On appeal, defendant challenges his conviction on three separate grounds. First, he alleges that the trial court committed plain error in its application of Utah Code Ann. § 76–5–411 (1999) by failing to make the required reliability evaluations of out-of-court statements offered at trial, by not reducing its findings to writing, and by admitting the hearsay statements of the victim's brother under section 76–5–411. Second, defendant argues that he was deprived of his right to effective assistance of counsel because his lawyer failed to object or otherwise limit the reference by several witnesses to defendant's previous incarcerations. Finally, defendant claims that the trial court abused its discretion by excluding testimony regarding previous allegations of abuse made by the victim's mother against other individuals.

## BACKGROUND

¶ 2 In reviewing a jury verdict, we view the evidence in a light most favorable to the verdict. *State v. Lafferty*, 2001 UT 19, ¶ 2, 20 P.3d 342. We recite the facts accordingly.

¶ 3 The appellant, Kevin Lee Pecht, married Belinda Pecht in 1985. They divorced in 1988. Ms. Pecht took custody of the couple's two children, but intermittently allowed them to stay with defendant when he was not incarcerated.

¶ 4 During one such period in 1997, defendant and his children lived together in a mobile home. All three slept together in the back bedroom on a single bed. On at least one occasion during that time, defendant sexually molested the victim, his daughter, by touching her breasts and genitals and, on at least two occasions, by sodomizing her. While the abuse was taking place, the victim's brother—defendant's son—was able to see or hear what was going on, although he was never physically abused. Defendant told both of his children not to tell anyone about his acts, explaining to them that he would be sent back to prison if anyone found out.

¶ 5 In June or July 1997, defendant was arrested and sent to prison for a parole violation connected with a previous conviction (not related to child abuse or these charges), and the children returned to live with their mother. One day during this period, the victim and her brother got into an argument at their mother's house, and the brother blurted out, "At least I don't suck my dad's dick." Ms. Pecht overheard the comment and contacted the Division of Child and Family Services (DCFS). Once contacted, DCFS arranged for interviews of both children by a caseworker, which were videotaped and transcribed.

¶ 6 Defendant was charged with two counts of sodomy upon a child and one count of aggravated sexual abuse of a child. A trial date was set for August 27, 1999, but on August 26, counsel for the defendant and the State reached an agreement on a proposed disposition of the case. Over the course of that evening, however, defendant "spent a sleepless night" and changed his mind, deciding that he wanted to proceed with the trial. In order to preserve the initial trial date in spite of the last minute change in plans, the trial court conducted a pretrial hearing on evidentiary matters under section 76–5–411 of the Utah Code and Utah Rule of Criminal Procedure 15.5.

¶ 7 The prosecution initially sought permission to offer five sets of statements into evidence under section 76–5–411 of the Utah Code, including statements contained in the videotaped interviews of the victim and her brother. The prosecution voluntarily withdrew one statement, after which the court made oral findings about the reliability of the remaining statements. In addition to the videotaped interviews, the remaining statements included a statement the victim made to a counselor, a written statement from the victim to one of the DCFS counselors, and the victim's statements from subsequent DCFS interviews. As to the videotapes, the trial court found that both of the children appeared to be sufficiently "reliable and trustworthy" because of the consistency with which they each told their stories during the interviews, as well as their responsiveness and maturity.

¶ 8 The victim's statement included uncontested information about the living situation at the mobile home, as well as her feelings about Pecht's incarceration, and her assertion that "she didn't want to go back" to living with her father. It also contained brief descriptions of the abuse.

¶ 9 The court made oral findings that the victim's comments were reliable based on, among other things, the manner in which the questions were asked and the victim's overall demeanor and knowledge. Regarding the counselor, the court found "that she followed her training with regard to long leading questions" and that there was not "any evidence that there were leading questions asked." In ruling on the victim's letter, the court relied on the earlier factual findings about the victim's age and maturity, and her relationship with Pecht, and found that "the best evidence before the court is that [the victim] did write the letter ... without her mother's knowledge." Finally, the trial court made oral findings about the nature of the statements and the qualifications of the counselors similar to its findings with regard to the videotape, and additionally found that the statements "would also be properly admissible under Rule 803(4), Utah Rules of Evidence, statements for purposes of medical diagnosis or treatment" because "the statement was an oral statement describing past or present symptoms." After addressing each statement, the trial court orally recited its findings, and then asked the prosecutor to put them into writing.

¶ 10 Also at the outset of the trial, counsel for both parties stipulated that defendant was incarcerated at the Utah State Prison "on a non-related, non-sexual offense matter." At this point, defendant had decided to testify at the trial, and was aware that his numerous felony convictions could be introduced to impeach his credibility. Defendant, however, felt that if he took the stand, he could inform the jury that even though he had an extensive criminal history, he had always "accepted responsibility" and had never before requested a jury trial. Therefore, as defendant's counsel explained to the court, defendant actually wanted the jury to know he was incarcerated as part of his trial

strategy. Defendant's theory of the case was that Ms. Pecht had orchestrated the allegations against him in order to have his parole revoked, thus leaving her with custody of the children. Defendant recognized that an implicit part of that defense was the admission that he was in fact on parole for a prior conviction. Both the State and defendant agreed that the stipulation was an effective means of minimizing the impact of defendant's history of incarceration.

¶ 11 An additional element of defendant's trial strategy involved information about previous occasions of sexual abuse of the victim by other people. Defendant intended to show that the victim's knowledge and use of sexually explicit terms could have been the result either of other occasions of abuse or of Ms. Pecht's statements about those occasions. In order to advance this part of defendant's strategy, defense counsel requested the court's permission to call two witnesses, Brian Hughes and Mary Ann Hartmann, who could testify that Ms. Pecht had told them about previous instances of abuse. The trial court questioned the relevance of the witnesses' testimonies, but stated it would refrain from making a formal decision until after Ms. Pecht testified.

¶ 12 During the State's case in chief, the prosecution called the two DCFS counselors and Ms. Pecht as witnesses, followed by the alleged victim and her brother. Although the children were physically removed from the presence of the jury and defendant, their testimony was transmitted to the courtroom via closed-circuit television.

¶ 13 After the children's testimony, outside the presence of the jury, the prosecution sought to recall Ms. Pecht as a witness. Defense counsel requested the court's permission to ask Ms. Pecht about the previous allegations of abuse. As the State pointed out, the questions were designed to get Ms. Pecht to deny making any previous allegations so that two witnesses could be called to impeach her. The trial court granted defense counsel permission to ask the questions, but pointed out that under a strict evidentiary analysis, they addressed only collateral matters. The court again deferred its ruling on whether the additional witnesses

would be allowed to testify until after Ms. Pecht's testimony.

¶ 14 During the prosecution's direct examination, Ms. Pecht indicated that she remembered making reports to DCFS about previous instances of sexual abuse in 1991 and 1992. During cross-examination, however, Ms. Pecht stated that she did not recall telling either Brian Hughes or Mary Ann Hartmann about the abuse. Ms. Pecht was then excused, and the State rested.

¶ 15 During defendant's case, the court excused the jury and asked to meet with counsel. The court raised the issue of defense counsel's earlier motion regarding the testimony of Brian Hughes and Mary Ann Hartmann. Defense counsel stated that he wished to call them to testify that Ms. Pecht had made specific allegations to them about the 1991 abuse. The court held that such statements "appear[ed] to be properly admissible." Notwithstanding this ruling, however, defense counsel did not call either witness to testify.

¶ 16 Throughout trial, several witnesses referred to defendant's criminal history, including previous arrests and prior periods of incarceration, all of which had been referenced in the stipulation agreed to by the parties. Defendant's counsel made no objection to any of these various references, nor did he request that the jury receive any limiting instruction regarding them.

¶ 17 On August 28, 1999, a jury convicted defendant on all three counts of the information, and he was sentenced to terms of ten-years-to-life on each of the sodomy convictions and five-years-to-life on the aggravated sexual abuse conviction.

## ANALYSIS

### I. STATUTORY REQUIREMENTS UNDER SECTION 76–5–411

¶ 18 Defendant raises the section 76–5–411 issues for the first time on appeal. Generally, a defendant who fails to bring an issue before the trial court is barred from asserting it on appeal unless the trial court committed "plain error." *State v. Labrum*, 925 P.2d 937, 939 (Utah 1996). In this case,

defendant argues that the trial court committed plain error by (1) failing to make adequate reliability findings under the statute, and (2) failing to reduce its findings to writing. Additionally, defendant argues that the court erred by allowing the victim's brother's videotaped statements into evidence under section 76–5–411. To establish plain error, an appellant must demonstrate that "(i) [a]n error exists, (ii) the error should have been obvious to the trial court, and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

### A. Consideration of the Reliability of the Admitted Statements

¶ 19 Before a court allows a child sex-abuse victim's out-of-court statements into evidence, it must specifically consider:

whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider (1) the age and maturity of the child, (2) the nature and duration of the abuse, (3) the relationship of the child to the offender, and (4) the reliability of the assertion and of the child. Utah Code Ann. § 76–5–411(2)(1999).

¶ 20 Assessing the last factor, "the reliability of the assertion and of the child," a court may be required to consider some matters not specifically mentioned in the statute. For example:

[A] court should consider how soon after the event [the statement] was given, whether the statement was spontaneous, the questions asked to elicit it, the number of times the statement was repeated or rehearsed, and whether the statement is reproduced verbatim in court, viz., tape recording, videotape, or otherwise.

*State v. Nelson*, 725 P.2d 1353, 1356 n. 3 (Utah 1986).

¶ 21 Defendant does not argue that the trial court failed to consider any of the factors mandated by section 76–5–411, but rather that the court failed to consider two of *Nelson's* suggested factors. Specifically, defendant claims that no consideration was given to either "how soon after the event [the statements were] given" or "the number of

times the statement was repeated or rehearsed." *Nelson*, 725 P.2d at 1356 n. 3.

■ ¶ 22 As a rule, this court generally " 'upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings.' " *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (citing *State v. Robertson*, 932 P.2d 1219, 1234 (Utah 1997)) (quoting *State v. Ramirez*, 817 P.2d 774, 788 n. 6 (Utah 1991)). We do not follow this rule when "(1) an ambiguity of facts makes the assumption unreasonable, (2) a statute explicitly provides that written findings must be made, or (3) a prior case states that findings on an issue must be made." *Id.* (citation omitted). Except in such instances, we will not infer "that the trial court's silence, by itself, presupposes that the court did not consider the proper factors as required by law." *Id.*

¶ 23 Here, we have no ambiguity of facts. Furthermore, there exists no statutory or case law requirement that written findings must be made.[1] Rather, the record contains the court's specific findings that the abuse occurred "start[ing] in ... September of 1996" and that the four admitted statements were respectively made "on or about March 25th of 1998," "April the 7th, 1998," "on April the 7th of 1998," and "on April 21st of 1998." The reference to these dates in its findings demonstrates the trial court's awareness of the length of time between the abuse and the statements. Moreover, there is no indication that the passage of time had any material effect on the reliability of the statements. Consequently, defendant's attempt to trigger a plain error review on this ground fails.

■ ¶ 24 Likewise, defendant's assertion that the trial court failed to adequately consider "the number of times the statement was repeated or rehearsed" under *Nelson* is unsupported. Reviewing the record as a whole, we conclude that the absence of the court's express consideration of this element is not error since there is no suggestion that the victim's testimony was memorized or rehearsed. Additionally, the trial court specifically found that none of the statements were

prompted, made under improper duress, or affected by any motive to fabricate.

■ . ¶ 25 Although it did not explicitly incorporate *Nelson's* terminology, the trial court made no error in its findings. The trial court correctly noted that the list of factors provided by section 76-5-411 "isn't exclusive but is simply intended to prompt a comprehensive inquiry into all the circumstances surrounding the out of court statement in order to determine ... reliability." The court's findings reflect such an inquiry, leaving no indication that defendant suffered any harm. Defendant implicitly concedes this point, first by failing to suggest any detrimental repetition or rehearsal at trial, and second, by failing to allege harm in his appellate brief.

### B. No Written Findings of Fact Requirement Under Section 76-5-411

¶ 26 Defendant also contends that the trial court erred by failing to issue its findings in writing. Although section 76-5-411 makes no specific requirement that the findings be written, this court has addressed the issue on several occasions.

¶ 27 *Nelson* is the principal case on section 76-5-411. There, the defendant was convicted of the rape and aggravated sexual abuse of a child. *Nelson*, 725 P.2d at 1353. Raising the issue of section 76-5-411's reliability findings sua sponte, we recommended the "consideration of ... matters not specifically mentioned in the statute." *Id.* at 1356 n. 3. The opinion held only that "the trial court must make an in-depth evaluation of the proposed testimony"; it did not require that those findings be written. *Id.*

¶ 28 Three years later, in *State v. Eldredge*, 773 P.2d 29 (Utah 1989), we again considered section 76-5-411. In *Eldredge*, the defendant had been convicted of sodomy of a child, and argued on appeal that the trial court erroneously admitted statements under section 76-5-411 without making the findings required by *Nelson*. *Id.* at 34. The issue in *Eldredge* was therefore not any

---

1. See, *infra*, section IB.

technical deficiency in the form of the findings, but rather the complete absence of findings. Although the issue was held not to have been preserved for appeal, and was therefore ultimately not determinative, *Eldredge* reinforced the importance of the finding requirements explained in *Nelson*. *Id.* We explained that "after considering all the relevant factors, the court must make *written* findings and conclusions with respect to each factor." *Id.* (emphasis added). The reference to "written" findings, therefore, was dictum, because the necessity for findings to be written was not argued or decided in *Eldredge*.

¶ 29 In *State v. Matsamas*, 808 P.2d 1048 (Utah 1991), the defendant was convicted of rape and sodomy of a child. *Id.* at 1049. The trial court admitted the evidence was based solely on the conclusion that "it might help the jury and the court decide what had occurred." *Id.* at 1052. As in *Eldredge*, no specific findings were made. We reversed, finding that the convictions were based in part on the evidence admitted under section 76–5–411, and that the trial court had failed to make the necessary findings regarding reliability of the evidence. *Id.* In *Matsamas*, we did not mention a writing requirement.

¶ 30 Two years later, in *State v. Seale*, 853 P.2d 862 (Utah 1993), we addressed an issue factually similar to the one raised here. The trial court in *Seale* made the specific findings required by the statute and *Nelson*, but did not reduce them to writing. The record, we said, "consider[ed] . . . as a whole," indicated the trial court's careful examination of the circumstances under which the hearsay statements were made, thus satisfying section 76–5–411's findings requirement. *Id.* Although the findings had not been reduced to writing, we saw "no reason why oral findings, duly recorded, [did] not satisfy that requirement." *Id.* at 872 n. 5.

¶ 31 *Eldredge's* dictum surfaced in 1994 in a Court of Appeals case. In *State v. Cook*, 881 P.2d 913 (Utah App.1994), the defendant appealed his conviction on two counts of sodomy of a child, alleging that the trial court erred by admitting hearsay statements into

evidence under section 76–5–411 "without making the express findings required." *Id.* It is unclear from the factual record preserved in *Cook* whether no findings had been made, as in *Eldredge* and *Matsamas*, or whether findings had been made but not reduced to writing, as in *Seale*. The Court of Appeals, however, not only incorrectly summarized *Nelson's* holding,[2] but also stated its belief that "the supreme court's language in *Eldredge* clearly establishes that after *Nelson*, a trial court's failure to enter written findings and conclusions under section 76–5–411 is plain error." *Id.* at 916.

¶ 32 More recently, this court has inadvertently added to the confusion. In *State v. Labrum*, 925 P.2d 937 (Utah 1996), we reviewed a Court of Appeals ruling affirming a gang sentence enhancement imposed on the defendant after his conviction for attempted criminal homicide. *Id.* The defendant argued that the trial court erred in not entering written findings of fact pursuant to section 76–3–203.1(1), which states, "[i]n conjunction with sentencing, the court *shall enter written findings* of fact concerning the applicability of this section" (emphasis added).

¶ 33 In our discussion of the statute at issue in *Labrum*, which does in fact explicitly require written findings, we, like the Court of Appeals in *Cook*, confused *Eldredge's* dictum with *Nelson's* holding. The section 76–5–411 issue was not before us in *Labrum*, and had not been addressed by the parties, but we nonetheless stated that "*Nelson* and subsequent cases held that written findings must be entered prior to admitting the statements." *Id.* at 940 (citing *Eldredge*, 773 P.2d at 36 n. 12, *Matsamas*, 808 P.2d at 1051, and *Cook*, 881 P.2d at 915–16).

¶ 34 The language of our cases makes clear that we have on several occasions, out of concern for the necessity of adequate, detailed, and specific findings, inadvertently referred to the required findings as "written" instead of merely "on the record." In *Labrum*, of course, the statute at issue is explicit in requiring written findings, but *Nelson*, *Eldredge*, and *Matsamas* were

---

2. The Court of Appeals stated *Nelson* was a "seminal case in this area which held that the

trial court must enter written findings under

only about findings versus no findings, not oral findings versus written ones. Our holding in *Seale* represents the only occasion where we have specifically considered the question of oral findings versus written ones in a case under section 76–5–411. We reiterate that holding now, and expressly disavow our prior dictum. Written findings are not required to determine that "the statutorily required appraisal has been made [under section 76–5–411]." *Nelson,* 725 P.2d at 1356 n. 3 To that extent, we overrule *State v. Cook.* While we strongly recommend that trial courts enter written findings, we hold that where the record as a whole sufficiently indicates that the comprehensive inquiries mandated by section 76–5–411 and *Nelson* have been made, an absence of written findings will not invalidate the trial court's conclusions. We therefore conclude that the absence of written findings in this case does not constitute error.

### C. "Victim" Under Section 76–5–411

¶ 35 Defendant also argues that the court's allowance of the victim's brother's testimony under section 76–5–411 was error.[3] The statute states, "A child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence...." Utah Code Ann. § 76–5–411 (1999). In *State v. Loughton,* 747 P.2d 426 (Utah 1987), we explained that the term "victim" as used in section 76–5–411 is merely to identify the declarant, and thus means an "alleged victim." *Id.* Such a reading is consistent with the plain meaning and intent of the legislation.

¶ 36 While defendant's actions presumably had an adverse impact upon his son, the victim's brother, and may well have constituted a criminal offense, the boy was not a "victim" of any of the offenses defendant was charged with in this case. He was therefore not an "alleged victim" under *Loughton* or a "victim" as contemplated by section 76–5–411.. Although the State attempts to expand the definition of "victim" under section 76–5–411 to include those indirectly affected by the abuse of another, doing so not only conflicts with the analysis in *Loughton,* but also is inconsistent with the focus of the statute. Therefore, the trial court's allowance of the victim's brother's videotaped testimony under section 76–5–411 was error.[4]

¶ 37 We believe that the error was plain. The court undertook extensive consideration of the reliability of the witnesses and of the language of the statute. During the prosecution's presentation of items to be admitted under section 76–5–411, the court re-read the statute and explained its limitations, thereby prompting the prosecution to withdraw one of the statements.[5] The language of the statute clearly states that "the victim's" out-of-court statements could be allowed.

¶ 38 Notwithstanding this conclusion of error, however, we find no measurable harm or prejudice to defendant. The record shows that nearly all of the information conveyed to the jury through the videotaped interview with the victim's brother was discussed in either the victim's or her brother's trial testimony. The only exception to this is that neither of the children repeated the words the victim's brother spoke during the argument overheard by Ms. Pecht. That statement, however, was repeated by counsel for both parties in opening statements, and by other witnesses later in the trial, all without objection.

¶ 39 Additionally, regardless of any details the videotapes may have provided that were not also provided in trial testimony, defendant's constitutional right to confront the witnesses was clearly preserved.

---

section 76–5–411." *State v. Cook,* 881 P.2d at 915.

3. The State contends that defendant did not raise the issue below and did not argue plain error, and that the issue should therefore be waived. We disagree. Pecht raised this issue while discussing the trial court's decisions on section 76–5–411 under the plain error framework. While the argument may not have been as fully developed as other issues raised on appeal, it was raised.

4. This court's holding under section 76–5–411, however, does not foreclose the admissibility of such statements under other evidentiary provisions, such as Rule 15.5, Utah Rules of Criminal Procedure. In this case, the State did not argue that the brother's statements were admissible under Rule 15.5.

5. *See* note 1, *supra.*

By questioning the victim and her brother in court, the State provided the defense with the opportunity to cross-examine both of them not only on the matters addressed in direct examination, but also on the substance of the information contained in the videotapes. *Nelson,* 725 P.2d at 1357. The defense chose not to question either the victim or her brother on the information contained in the videotapes, but the opportunity to do so was available, satisfying the confrontation clause. *Id.* "It is the opportunity to cross-examine that is guaranteed by the state and federal constitutions, not whether that opportunity is exercised." *Id.* (citing *State v. Jolley,* 571 P.2d 582, 586 (Utah 1977)). Thus, defendant did not suffer prejudice warranting reversal of the jury's verdict.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 40 Defendant next argues that his trial counsel was ineffective in failing to object to or to request limiting instructions concerning evidence of defendant's numerous periods of incarceration. Defendant claims that he was unjustly prejudiced by the evidence because it created the impression that defendant possessed a propensity to commit crime.

¶ 41 In order to demonstrate ineffective assistance, an appellant must show that trial counsel "rendered deficient performance which fell below an objective standard of professional judgment," and that the deficiency was ultimately prejudicial. *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998). A defendant cannot prevail on a claim of ineffective assistance of counsel where "the challenged act of omission might be considered sound trial strategy." *State v. Parker,* 2000 UT 51, ¶ 10, 4 P.3d 778.

¶ 42 Defense counsel stated to the court at the outset of the trial that letting the jury know about defendant's incarceration was part of a trial strategy he had discussed with defendant. Indeed, counsel stated that defendant was "adamant" about this element of the defense. Defendant's strategic position was that Ms. Pecht had orchestrated the allegations to obtain custody of the children. Defendant was incarcerated for violating his parole from a prior conviction for a non-sexual offense, but he asserted that he would have been released if it were not for the allegations in this case. Apparently, defendant thought that letting the jury know he was incarcerated would illustrate that Ms. Pecht's "plan" had been successful. He recognized that an implicit element of this strategy was letting the jury know about the conviction for which he was incarcerated. As a result of this defense strategy, defendant agreed to stipulate with the State to inform the jury that he was incarcerated on a "non-related, non-sexual" offense.

¶ 43 Further, defendant's trial counsel had considered the effect of making the jury aware of his incarceration history because the defendant insisted on taking the stand. Defendant believed that his testimony would help his defense because he could inform the jury that although he had an extensive criminal record, he had always taken responsibility for his previous crimes. This was defendant's decision, in spite of his counsel's advice against testifying. These strategic elements were already in place when other witnesses mentioned his incarceration record, and no objections were made to their comments because he intended to discuss the same issues in his testimony.

¶ 44 Shortly before he was to take the stand, however, defendant changed his mind. Whether or not the original defense strategy would have been effective is impossible to determine. Nevertheless, defendant had made his testimony a key element of his defense, and his last-minute decision not to testify caused the strategy to unravel. The failure of trial strategy, however, does not indicate ineffectiveness of counsel. *See Parsons v. Barnes,* 871 P.2d 516, 524 (Utah 1994) ("[W]henever there is a legitimate exercise of professional judgment in the choice of trial strategy, the fact that it did not produce the expected result does not constitute ineffectiveness of counsel.") (citations omitted). Defendant's ineffective assistance of counsel claim fails.

## III. EXCLUSION OF DEFENSE WITNESSES

¶ 45 The final issue defendant raises is whether the trial court erred in excluding the testimony of Brian Hughes and Mary Ann Hartmann, who would have testified that Ms. Pecht had previously made allegations of sexual abuse of her daughter. In presenting this issue, defendant has not accurately represented the trial court's decision.

¶ 46 The record indicates that defense counsel raised the issue of the witnesses prior to trial, but that the court deferred ruling on the issue until it heard from other witnesses. When the court did rule on the issue, it plainly stated that the witnesses' statements would be allowed. The record also clearly shows that in spite of the court's ruling, the witnesses were never called. There is no indication, however, that they were not called because they had been excluded by the court. The trial court exercised its discretion judiciously in holding that the witnesses' potential statements "appear[ed] to be properly admissible." Defendant's claim that the witnesses were excluded is simply incorrect, and therefore without merit.

## CONCLUSION

¶ 47 We hold that: (1) the trial court's reliability findings regarding the hearsay statements admitted pursuant to section 76–5–411 and our previous holding in *Nelson* were sufficient; (2) section 76–5–411 does not require written findings—oral findings, duly recorded, are sufficient; (3) the victim's brother was not a "victim" within the meaning of section 76–5–411, but the trial court's error in admitting his statements was harmless; (4) defendant's trial counsel did not provide ineffective assistance by failing to object to multiple references to defendant's incarceration record when the disclosure of the same information was an integral element of defense strategy; and (5) defendant's witnesses were not excluded by the court.

¶ 48 The defendant's conviction is affirmed.

¶ 49 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.