2002 UT App 259

**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Andrew FRAUSTO, Defendant and Appellant.**

No. 20000520–CA.

Court of Appeals of Utah.

Aug. 1, 2002.

Margaret P. Lindsay, R. Paul Kawai, Aldrich Nelson Weight & Esplin, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, Christine Soltis, Assistant Attorney General, for Appellee.

Before Judges BENCH, GREENWOOD, and THORNE.

## OPINION

GREENWOOD, Judge:

¶ 1 Richard Andrew Frausto (Defendant) appeals from a conviction of Murder, a first degree felony, in violation of Utah Code Ann. § 76-5-203 (Supp.1991). Defendant argues that the trial court committed plain error by failing to define terms in a jury instruction and failing to give the jury a supplemental instruction. Defendant also argues that because his trial counsel did not object to the trial court's failure to give a supplemental instruction, he received ineffective assistance of counsel. Finally, Defendant argues that delays in his appeals process violated his due process rights. We affirm.

## BACKGROUND [1]

¶ 2 Sometime during the early morning hours of July 28, 1992, Defendant sat in his living room with a loaded .22 caliber pistol pointed at his head and told his friend to bring Larry Gilstrap (Gilstrap) to Defendant's trailer or Defendant would kill himself. Defendant was upset with Gilstrap because of Gilstrap's relationship with the girlfriend of one of Defendant's friends. Defendant's wife went to Gilstrap's home to tell him that Defendant was "getting crazy, holding a gun to his head and stuff like that."

¶ 3 Gilstrap drove his truck over to Defendant's home. Defendant armed himself with a .357 caliber revolver in addition to the .22 caliber pistol and went outside to meet Gilstrap, who was standing by his truck. Defendant confronted Gilstrap about his relationship with Defendant's friend's girlfriend. Defendant then fired his weapons hitting Gilstrap in the neck, chest, and back. Gilstrap died as a result of his injuries. Defendant was arrested for murder.

¶ 4 At trial, after they had begun deliberating, the jury made two inquiries concerning Jury Instruction 13–C. The first note sent to the trial judge asked for a clarification of Instruction 13–C, which was an instruction on duels, mutual combat, or consensual altercation. The trial judge, with the consent of counsel, told the jury, "Please rely on the language of 13–C as it is written and consider all the instructions as a whole." Later, the jury again sent a note to the trial judge asking, "Does the statement 'it is no defense "to" the prosecution' mean no help for th[e] prosecution[?]" Again, both parties' counsel were called into the judge's chambers to discuss a reply. Over the prosecution's objection, Defense counsel persuaded the court to give a supplemental instruction. The court then informed counsel that it would call the jury back into session and read the new instruction to the jury in open court.

¶ 5 Before the instruction could be read, however, the jury announced it had reached a verdict. The trial judge instructed the bailiff to bring the jury back in, "unless there's anything before the Court prior to their return." Both counsel responded in the negative. The supplemental instruction was never read to the jury, and defense counsel did not move to have the instruction read.

¶ 6 The jury found Defendant guilty of murder. Defendant was sentenced to six years to life for the Murder.[2] The judgment was entered on January 6, 1993.

¶ 7 Defendant's trial attorney, Mr. J. MacArthur Wright, filed a timely notice of ap-

---

1. "We state the facts in the light most favorable to the jury's verdict." *State v. Morgan,* 865 P.2d 1377, 1378 (Utah Ct.App.1993).

2. The original judgment imposed an erroneous term for the firearm enhancement. The judgment was subsequently amended to impose the correct six-year minimum term.

peal and requested preparation of the trial record and transcripts. On February 10, 1993, Mr. Wright withdrew as counsel because of statements made by Defendant concerning what issues Defendant thought should be the basis of the appeal. Mr. Michael Miller entered his appearance as substitute counsel ·for Defendant. Mr. Miller filed a Motion to Supplement Record with the unrecorded discussions concerning the supplemental instruction. On March 7, 1994, Defendant filed a letter requesting appointment of substitute counsel. This court remanded the case to the district court for consideration of Defendant's request for substitute counsel, and for proceedings on the creation of a supplemental record pursuant to Mr. Miller's motion. Mr. Miller filed a notice of withdrawal.

¶ 8 On June 15, 1994, Mr. Floyd Holm was appointed to represent Defendant. Both parties' counsel informed the court that a stipulation had been reached as to the Motion to Supplement Record. On October 19, 1995, Defendant again requested appointment of new counsel. This court denied Defendant's request for new counsel and ordered Mr. Holm to file Defendant's brief by January 10, 1996. Mr. Holm wrote to Defendant informing him that he was aware of Defendant's complaint against him to this court and to the Utah State Bar (the Bar). Mr. Holm informed Defendant that if he continued with his complaint against him to the Bar, he would be unable to represent him on appeal. Mr. Holm also informed Defendant that if Mr. Holm had to withdraw, his appeal would be delayed until new counsel could be appointed. Nevertheless, Defendant renewed his request that Mr. Holm be removed and new counsel be appointed. On January 29, 1996, this court remanded the case back to the trial court for a determination of whether new counsel should be appointed. The trial court removed Mr. Holm due to Defendant's appeal of the Bar's dismissal of his complaint against Mr. Holm and appointed Mr. Thomas A. Blakely.

¶ 9 Mr. Blakely was required to file Defendant's brief by June 7, 1996. On June 28, 1996, this court dismissed Defendant's appeal for failure to file a brief within the time permitted. From August 12, 1996, to June 5, 2000, no appeal was pending in this case.

¶ 10 On September 2, 1997, Defendant filed a pro se motion asking the trial court to resentence him nunc pro tunc so he could appeal his conviction. Defendant argued that Mr. Blakely's failure to file an appellate brief resulted in the dismissal of his appeal. Mr. Odean Bowler was appointed as Defendant's counsel and the trial court ordered Defendant to be resentenced nunc pro tunc to correct the error in the docket text regarding Defendant's sentence and to accord him another opportunity to appeal. On May 8, 2000, a nunc pro tunc judgment was entered that permitted Mr. Bowler to file a new notice of appeal.

¶ 11 Mr. Bowler filed a docketing statement, but then moved to withdraw because he was no longer a Washington County Public Defender. On October 26, 2000, this court remanded the case to the trial court for appointment of new counsel. Defendant's current appellate counsel was appointed on January 17, 2001, and filed Defendant's brief on November 28, 2001.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 Defendant argues that the trial court committed plain error by giving Jury Instruction 13–C without defining the terms within it and by failing to give the jury a supplemental instruction. Because Defendant did not object on the record to the trial court's alleged errors, Defendant can only obtain relief by demonstrating plain error. *See State v. Pecht,* 2002 UT 41, ¶ 18, 48 P.3d 931.

> Plain error requires a showing that "(i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant]." To show obviousness of the error, [Defendant] must show that the law was clear at the time of trial.

*State v. Garcia,* 2001 UT App 19, ¶ 6, 18 P.3d 1123 (citations omitted).

¶ 13 Defendant also argues that he received ineffective assistance of counsel be-

cause defense counsel did not object to the trial court's failure to give a supplemental instruction. For Defendant to establish an ineffective assistance of counsel claim, Defendant "must show that trial counsel 'rendered deficient performance which fell below an objective standard of professional judgment,' and that the deficiency was ultimately prejudicial. A defendant cannot prevail on a claim of ineffective assistance of counsel where 'the challenged act of omission might be considered sound trial strategy.'" *Pecht,* 2002 UT 41 at ¶ 41, 48 P.3d 931 (citations omitted).

■ ¶ 14 Finally, Defendant argues that substantial delays in his appeals process violated his due process rights. "'Constitutional issues, including ... due process, are questions of law which we review for correctness.'" *State v. Mast,* 2001 UT App 402, ¶ 8, 40 P.3d 1143 (citation and quotations omitted) (alteration in original).

## ANALYSIS

### I. Failure to Define Jury Instruction Terms

■ ¶ 15 Defendant argues that the trial court plainly erred by not including a definition of "duels, mutual combat, or consensual altercations" in Jury Instruction 13–C, causing jury confusion. We disagree.

¶ 16 Jury Instruction 13–C stated,

You are instructed that it is no defense to the prosecution that the Defendant was a party to any duel, mutual combat, or other consensual altercation if during the course of the duel, combat, or altercation any dangerous weapon was used. A firearm is a dangerous weapon.

Instruction 13–C was drafted almost verbatim from the language of Utah Code Ann. § 76–5–104 (Supp.1989).[3]

¶ 17 The jury sent two notes to the trial judge concerning Jury Instruction 13–C. The first note stated, "Could we get a [clarification] on Instruction 13–C." After consulting with both parties' counsel, the trial judge sent a note back to the jury stating, "Please rely on the language of 13–C as it is written, and consider all the instructions as a whole."[4] The jury's second note concerning Jury Instruction 13–C asked, "Does the statement 'it is no defense "to" the prosecution' mean no help for th[e] prosecution[?]" Neither of these notes asked the trial judge to define the terms "duel, mutual combat, or consensual altercation," nor indicated that the jury was confused about the meaning of these commonly used terms.

¶ 18 The Utah Supreme Court has stated that "[i]t is normally unnecessary and undesirable for a trial judge to volunteer definitions of terms of common usage for the jury." *State v. Couch,* 635 P.2d 89, 94 (Utah 1981). Jury Instruction 13–C tracks the language of section 76–5–104 and is consistent with case law that has approved jury instructions using similar terms. *See State v. Starks,* 627 P.2d 88, 90 (Utah 1981) ("If an instruction is supported by the evidence and its meaning is clear, an instruction in the form of statutory language is not improper."); *see also State v. Sherard,* 818 P.2d 554, 561 (Utah Ct.App. 1991) (approving instruction that used the terms "mutual combat, or other consensual altercation"); *State v. Pascual,* 804 P.2d 553, 556 (Utah Ct.App.1991) (concluding that an instruction using terms "duel, mutual combat, or other [consensual] altercation" did not prejudice defendant). Furthermore, "beyond the substantive scope, correctness, and clarity of the jury instructions, their precise wording and specificity is left to the sound discretion of the trial court." *Sherard,* 818 P.2d at 560 (citation, quotations and alteration omitted).

¶ 19 "Ordinarily, non-technical words of ordinary meaning should not be elaborated upon in the instructions given by the court. It is presumed that jurors have ordinary intelligence and understand the meaning of ordi-

---

3. In any prosecution for criminal homicide under Part 2 of this chapter or assault, it is no defense to the prosecution that the defendant was a party to any duel, combat, or altercation if during the course of the duel, combat, or altercation any dangerous weapon as defined in Section 76–1–601 was used.

Utah Code Ann. § 76–5–104 (Supp.1989).

4. Defendant does not challenge the court's response to the jury's first question.

nary words...." *Couch*, 635 P.2d at 94 (quotations and citation omitted). Defendant has failed to establish that the terms "dual, mutual combat, or consensual altercation" used in Jury Instruction 13–C were uncommon or that the jury did not understand their meaning. Thus, Defendant has not established that the trial court committed plain error in not defining the terms "duel, mutual combat, or consensual altercation."

## II. Failure to Give a Supplemental Instruction

¶20 Defendant argues the trial court committed plain error by not giving a supplemental instruction to answer the jury's second question before the jury reached its verdict, thereby jeopardizing the integrity of the jury's verdict to Defendant's detriment. Defendant also argues that his defense counsel's failure to request the trial court to read the supplemental instruction resulted in Defendant receiving ineffective assistance of counsel.

¶21 After the trial judge received the jury's second note asking, "Does the statement 'it is no defense "to" the prosecution' mean no help for th[e] prosecution," the trial judge called both parties' counsel into chambers to discuss the jury's question. Over the prosecution's objection, the trial judge agreed to give the jury a supplemental instruction. However, before the trial judge could give the supplemental instruction to the jury, the jury announced it had reached a verdict. Before the jury was brought back into the courtroom to read its verdict, the trial court asked counsel if there was anything they wanted to bring before the court. Defense counsel did not make any motions to have the supplemental instruction given before the verdict was read.

¶22 Even if this court were to assume *arguendo* that the trial court erred in not giving the supplemental instruction, Defendant must still show under the plain error standard that this error should have been obvious, meaning that "the law was clear at the time of trial" and that he was prejudiced by the error. *State v. Garcia*, 2001 UT App 19, ¶18, 18 P.3d 1123 (citing *State v. Ross*, 951 P.2d 236, 239 (Utah Ct.App.1997) (stating

that "error is not plain where there was no settled appellate law to guide the trial court.")).

¶23 There is no Utah case law addressing whether a trial court must give a supplemental instruction after the jury has requested one but then reaches a verdict without the supplemental instruction. Without well-settled law in this area to guide the trial court, such an error would not have been obvious. Therefore, Defendant has failed to meet the second prong of the plain error test.

¶24 In addition, Defendant has failed to show that he was prejudiced by the trial court's failure to read the supplemental instruction. *See id.* at ¶19 ("[E]rror is harmful [if] absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant]." (Citation and quotations omitted) (second alteration in original.)); *see also State v. Kozik*, 688 P.2d 459, 461 (Utah 1984) ("[W]e do not upset the verdict of a jury merely because some error or irregularity may have occurred, but will do so only if it is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result." (Quotations and citation omitted) (alteration in original.)).

¶25 Defendant argues that "[i]f the Court had insisted on addressing the issue, before allowing the verdict to be read, the jury might have returned to further deliberat[e], to the benefit of the Defendant." The proposed supplemental instruction stated:

It is the law, as stated in Instruction No. 13–C, that dueling, mutual combat, or a consensual altercation *shall be no defense to a criminal charge of Murder*, if the accused employed a dangerous weapon in causing the death of another during a duel, mutual combat or consensual altercation. However, you are also instructed that in this case, you must consider whether or not the Defendant was justified in the use of deadly force under the law of self-defense as set forth in Instruction No. 13–E.

(Emphasis added.) There is no indication that giving the supplemental instruction would have produced a more favorable outcome for Defendant. In fact, any confusion

the jury may have had would likely have worked in Defendant's favor. The supplemental instruction would have benefitted the prosecution because it clarified that if the jury found Defendant to have engaged in mutual combat or a consensual encounter using a dangerous weapon, Defendant did not have the benefit of the self-defense theory against the charge of Murder. Therefore, Defendant has failed to show prejudice by the trial court's failure to read the supplemental instruction.

¶ 26 Defendant next argues that without defining the phrase, "it is no defense to the prosecution," the jury instruction unfairly limited his reliance on self-defense because the resulting confusion "include[d] the belief that the burden of proof regarding self-defense fell upon the Defendant." Defendant's argument is without merit.

¶ 27 Jury Instruction 13–E, which is not at issue here, stated the law concerning self-defense and the State's burden to prove beyond a reasonable doubt that the killing was not in self-defense. In addition, defense counsel discussed this instruction and the State's burden at length during his closing arguments.

¶ 28 In *State v. Garcia*, this court found that the trial court committed plain error by not adequately instructing the jury about the burden of proof for self-defense. *See* 2001 UT App 19 at ¶ 20, 18 P.3d 1123. While the trial court in *Garcia* had given jury instructions that "generally informed the jury correctly of the general burden of proof and of who carried it," the instructions did not clarify who had the burden of proof for self-defense. *Id.* at ¶ 16, 18 P.3d 1123. This court concluded that,

> When the defendant has reached the threshold to merit self-defense instructions, those instructions must clearly communicate to the jury what the burden of proof is and who carries the burden. Trial

courts should separately instruct each jury clearly that the State must disprove self-defense, and other affirmative defenses, beyond a reasonable doubt.

*Id.*

¶ 29 In the present case, the trial court fulfilled its obligation to inform the jury that the burden of proof for self-defense was on the State. This court has said that "[j]ury instructions must be read and evaluated as a whole." *State v. Lucero,* 866 P.2d 1, 3 (Utah Ct.App.1993). The trial judge reminded the jury of their obligation to read the jury instructions as a whole in its first note to the jury which stated, "Please rely on the language of 13–C as it is written, and consider all the instructions as a whole." It is purely speculative that the jury was confused about who had the burden of proof from its question about whether "the statement 'it is no defense "to" the prosecution' mean[s] no help for th[e] prosecution." The jury instructions, taken as a whole, correctly informed the jury that the burden of proof for showing that the Defendant did not act in self-defense was on the State.

¶ 30 Given these decisions, there is no basis for Defendant's ineffective assistance of counsel claim. As we have noted, if the supplemental instruction had been given, it would not have benefitted Defendant. Therefore, we assume that as part of his trial strategy, defense counsel did not insist that the trial court give the supplemental instruction before the verdict was read.[5] *See State v. Parker,* 2000 UT 51, ¶ 10, 4 P.3d 778 (" '[I]f the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel.' " (Citation omitted.)).

### III. Delay in Appeal Process

¶ 31 Defendant argues that the substantial delay in his appeals process violated

---

5. Defendant also argues that his trial counsel was ineffective for (1) failing to object to Instruction 13–C in its proposed form; (2) failing to request a supplemental instruction giving the jury the definitions of duel, mutual combat, or consensual altercation; and (3) failing to request a mistrial. We do not consider these claims because Defendant has failed to show he was

prejudiced as a result of his counsel's performance. *See State v. Pursifell,* 746 P.2d 270, 275 (Utah Ct.App.1987) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." (Quotation and citation omitted) (alteration in original.)).

his due process rights. Citing *Harris v. Champion*, 15 F.3d 1538 (10th Cir.1994), Defendant argues that because his direct appeal has been pending for nine years, there has been a breakdown in Utah's judicial system that requires not only the reversal of his conviction, but also a bar to retrial. We disagree.

¶ 32 *Harris* addressed state convicts' collateral claims that they were deprived of their right to appeal by the systematic breakdown of the Oklahoma criminal appellate system. *See id.* at 1548–49. The *Harris* court was faced with an "appellate criminal justice system in Oklahoma [that] was in a crisis." *Id.* at 1550. The public defenders office was unable to keep up with a growing number of felony appeals resulting in a serious backlog, due to lack of funding and staffing. It became routine practice for the public defender to ask for 360–day extensions followed by requests for extensions of 180 days or less. These extensions were normally granted by the Oklahoma Court of Appeals. *See id.* at 1548. Petitioners, all of whom were represented by the public defenders, had to wait three years or more before a brief was filed in their direct appeals. *See id.* at 1546.

¶ 33 The *Harris* court also found that the Oklahoma Court of Criminal Appeals was experiencing a growing backlog of cases. *See id.* at 1550. Even the Attorney General's office began to show a trend of filing untimely briefs. *See id.* As a result of this systematic breakdown of Oklahoma's criminal justice system, the *Harris* court modified the U.S. Supreme Court's four-part test for determining whether a criminal defendant has been deprived of his or her right to a timely process at the trial level and applied it to determine whether a defendant's due process right to a timely, direct criminal appeal had been violated. *See id.* at 1558–59. Defendant urges this court to apply *Harris's* four-part test in evaluating whether his due process rights to a timely appeal were violated. We decline Defendant's invitation.

¶ 34 While we acknowledge that an extraordinary length of time has passed since Defendant was convicted in December 1992, the delay in this case was inordinate and atypical and certainly not one condoned by this court. However, the reasons for the delay in Defendant's appeal are not analogous to the systematic breakdown experienced by the Oklahoma criminal appellate system. Instead, the majority of delays in Defendant's case can be directly attributed to Defendant's repeated requests for new counsel.

¶ 35 For example, Defendant was sentenced on January 6, 1993, and on January 22, 1993, Mr. Wright filed a timely notice of appeal and requested preparation of the trial transcripts. Mr. Wright then withdrew due to concerns he had about comments that Defendant made to him about what issues should be appealed. Mr. Miller was then appointed as new counsel on February 10, 1993 and worked diligently on Defendant's appeal until Defendant requested that Mr. Miller be removed and new counsel be appointed. On June 15, 1994, Mr. Holm was appointed to represent Defendant. Again, the record shows that Mr. Holm worked continually on Defendant's appeal. However, on October 19, 1995, one week before Defendant's brief was to be filed, Defendant requested appointment of new counsel. Defendant also filed a complaint against Mr. Holm with the Bar, which was ultimately dismissed. This court denied Defendant's request for new counsel and ordered Defendant's brief to be filed by January 10, 1996. On January 5, 1996, five days before Defendant's brief was due, Defendant again requested that Mr. Holm be removed and new counsel be appointed, despite Mr. Holm's warnings to Defendant that his request would delay his appeal. Mr. Holm ultimately had to be removed due to Defendant's appeal of the Bar's dismissal of his complaint against Mr. Holm and Mr. Blakely was appointed.

¶ 36 The record shows that each of Defendant's appointed counsel, with the exception of Mr. Blakely, worked diligently on Defendant's appeal. This required each newly appointed counsel to perform the time consuming review of the 1500 page trial court record to become familiar with Defendant's issues. The record shows that from January 6, 1993 until February 23, 1996, Defendant was primarily responsible for the delays in his appeal process. In addition, from August 1996 to June 2000, no direct appeal was pending in

Defendant's case. Defendant's current appeal has only been pending since June 2000.

¶ 37 Furthermore, Defendant has failed to show how he has suffered prejudice because of the delays in his appeal. Only one of Defendant's appointed counsel failed to do a required act. That error was cured when Defendant was resentenced nunc pro tunc and his right to appeal was reinstated. In addition, Defendant has failed to present any meritorious issues on appeal and, therefore, has not suffered any prejudice from the delays in his appeals process. Thus, Defendant's due process rights were not violated. *See United States v. Hawkins,* 78 F.3d 348, 352 (8th Cir.1996) ("Even if [the defendant's] appeal had been decided in a timely fashion, he still would have failed on the merits. Thus, [the defendant's] due process rights were not violated, for he has failed to show prejudice."); *United States v. Tucker,* 8 F.3d 673, 676–77 (9th Cir.1993) (affirming defendant's conviction where appeal was meritless and failed to demonstrate prejudice by delays in appeals process); *People v. Rios,* 43 P.3d 726, 733 (Colo.Ct.App.2001) ("a claim of prejudice" will not be established if defendant failed to present "any basis for reversal of his conviction").

## CONCLUSION

¶ 38 In sum, Defendant has failed to show that the trial court plainly erred by not defining terms within Jury Instruction 13–C and by not giving the jury a supplemental instruction. Defendant has also failed to show that his trial counsel was ineffective. Finally, because delays in Defendant's appeal are largely the result of his numerous requests for new counsel and four years during which no appeal was pending, and because Defendant has presented no meritorious issues on appeal, he has failed to establish that he has been prejudiced by the delays in his appeals process. Therefore, we affirm Defendant's conviction.

¶ 39 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE JR., Judges.